# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

SELVIN ARIEL CHUNUX-COC (A-No. 220-598-003),

Petitioner,

v.

TONYA ANDREWS, et al.,

Respondents.

Case No. 1:26-cv-02626-JLT-FJS

ORDER CONVERTING THE MATTER TO A PRELIMINARY INJUNCTION[1]; GRANTING THE PRELIMINARY INJUNCTION IN PART; REFERRING THE MATTER TO THE ASSIGNED MAGISTRATE; AND DIRECTING RESPONDENTS TO PROVIDE SUBSTANTIVE BOND HEARING

(Doc. 2)

## I.   INTRODUCTION

Before the Court is Selvin Ariel Chunux-Coc's request for a temporary restraining order (Doc. 2), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing detention. (Doc. 1.) The government filed a response to the TRO and the underlying petition, asserting only that the Petitioner is subject to mandatory detention, a legal position that this Court has rejected repeatedly. (Doc. 7.)  Thus, the Court converts the matter into a motion for preliminary injunction, **GRANTS** that motion **IN PART**, and **REFERS** the matter to the assigned magistrate judge for a determination on the merits.

---

[1] Respondents do not oppose conversion of any motion for temporary restraining order to a motion for a preliminary injunction and do not request a hearing. (Doc. 7 at 1.) Petitioner also does not oppose converting the temporary restraining order into a motion for preliminary injunction, but requests additional time to submit a traverse to the government's response. (Doc. 8 at 2.)

## II.    LEGAL STANDARD

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical"). When seeking a TRO or PI, plaintiffs must establish: (1) they are "likely to succeed on the merits" of their claims, (2) they are "likely to suffer irreparable harm in the absence of a preliminary injunction," (3) "the balance of equities tips in [their] favor" and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party has the burden to "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Thus, the moving party has "the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Hecox v. Little*, 104 F.4th 1061, 1073 (9th Cir. 2023). The Court may weigh the request for a preliminary injunction with a sliding-scale approach. *Alliance*, at 1135 (9th Cir. 2011). Accordingly, a stronger showing on the balance of hardships may support the issuance of a preliminary injunction where there are "serious questions on the merits … so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. Preliminary injunctions are intended to "merely to preserve the relative positions of the parties until a trial on the merits can be held, and to balance the equities at the litigation moves forward." *Lackey v. Stinnie*, 604 U.S. ___, 145 S. Ct. 659, 667 (2025) (citations omitted).

The status quo refers to "the last uncontested status which preceded the pending controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963) (quoting *Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 256 F.2d 806, 808 (7th Cir. 1958)). In the Court's view, that is the status before Petitioner was arrested. *See Kuzmenko v. Phillips,* No. 25-CV-00663, 2025 WL 779743, at *3 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

### III.   FACTUAL & PROCEDURAL BACKGROUND

Petitioner is a native of Guatemala who entered the United States as an unaccompanied minor on or about August 23, 2021, where he was encountered by federal law enforcement officials near Hildalgo, Texas. (Doc. 1 at 8; Doc. 7-7 at 3.) Respondents charged Petitioner with inadmissibility under 8 U.S.C. § 1182 and the U.S. Department of Health & Human Service (HHS) Office of Refugee Resettlement (ORR) released the Petitioner from custody into the care of his father on September 6, 2021, pursuant to William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA") of 2008.[2] (Doc. 1 at 8; Doc. 7-1 at 1; Doc. 7-5 at 1.) On November 16, 2022, the Immigration Judge ordered Petitioner removed, *in absentia*, to Guatemala. (Doc. 7-2.) On January 10, 2023, the Immigration Judge granted Petitioner's request to reopen his immigration proceedings. (Doc. 7-3.) On March 8, 2023, Petitioner, through immigration counsel, filed written pleadings with the Immigration Court, wherein he admitted the allegations in the NTA, and he conceded the charge of removability under section 212(a)(6)(A)(i) of the INA. (Doc. 7-4.) On November 8, 2023, the Immigration Judge granted Petitioner's request to administratively close his immigration case with the Immigration Court because Petitioner filed an application for immigration relief with U.S. Citizenship and Immigration Services ("USCIS"). (Doc. 7-4.) On or about November 25, 2025, USCIS determined Petitioner was no longer eligible for the relief he sought. (Doc. 7-5.)

On or about December 6, 2025, Petitioner was arrested and charged with one count of Driving Under the Influence Alcohol, and one count of Driving Under the Influence/0.08 Percent

---

[2] The TVPRA provides that, in making custody determinations, HHS should consider "danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A). In releasing Petitioner, HHS must have determined that he was neither a flight risk nor a danger to the community. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176, 1178 (N.D. Cal. 2017) ("[Immigration officials] may release the minor to a 'sponsor' ... so long as the minor is not dangerous ... Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), aff'd 905 F.3d 1137 (9th Cir. 2018). The TVPRA statutes further contemplate using the "least restrictive setting" regarding placement for minors in HHS custody and placement for minors in DHS custody after turning 18 years old. See 8 U.S.C. § 1232(c)(2)(A)–(B). Although neither Petitioner nor Respondents cite the TVPRA as an avenue of relief, the Court adopts is reasoning in *Cornejo v. Andrews*, No. 1:25-CV-02062 JLT HBK, 2026 WL 237748, at *8-9 (E.D. Cal. Jan. 29, 2026) and *Carranza v. Chestnut*, No. 1:26-CV-01195-JLT-SKO (HC), 2026 WL 534699, at n.2 (E.D. Cal. Feb. 26, 2026) and finds that Petitioner has a protected liberty interest requiring a pre-deprivation hearing prior to his detention on February 7, 2026. Respondents' failure to provide such hearing constitutes a due process violation.

in violation of California Vehicle Code ("VC") section 23152. (Doc. 7-6.) The disposition is unknown. On or about January 17, 2026, Petitioner was again arrested and charged with one count of Driving Under the Influence Alcohol, and one count of Driving Under the Influence/0.08 Percent in violation of VC section 23152. (Doc. 7-6.) The disposition is unknown. On or about February 7, 2026, Petitioner was taken into DHS custody, and he is currently housed at the Golden State Annex in McFarland, California. (Doc. 7-7 at 2.) Petitioner admitted that he is an active member of the "Southerners" criminal street gang. (*Id*.) In a declaration attached to Respondents' opposition, Deportation Officer Justin M. Rodriguez stated that the "Southerners" criminal street gang is also known as the Sureños and that Petitioner has tattoos that are associated with membership in the Sureños.[3] (Doc. 7-10 at 3-4, ¶¶ 17, 18.)

The government filed a response to the petition and issuance of preliminary injunctive relief, arguing that Petitioner's detention is "mandatory" under expedited removal procedures set forth at 8 U.S.C. § 1225(b)(2). (*See generally* Doc. 7.) Respondents offer little to rebut Petitioner's due process claim and do not provide any justification for detaining Petitioner without a bond hearing and make no effort to distinguish this current case from the numerous cases issued by the undersigned, finding this legal position to be incorrect and the detention unlawful. *J.S.H.M. v. Wofford*, No. 1:25-CV-01309-JLT-SKO (HC) (E.D. Cal. Oct. 16, 2025); *Ortiz Donis v. Chestnut,* No. 1:25-CV-01228-JLT-SAB (HC), 2025 WL 32879514 (E.D. Cal. Oct. 9, 2025); *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT (HC), 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185 (E.D. Cal. Sept. 5, 2025); *Aguilera v. Albarran*, No. 1:25-CV-01619 JLT SAB, 2025 WL 3485016 (E.D. Cal. Dec. 4, 2025); *Garcia v. Chestnut*, No. 1:25-CV-01907-JLT-CDB, 2025 WL 3771348 (E.D. Cal. Dec. 31, 2025); *Carlos v. Chestnut*, No. 1:26-CV-00007-JLT-SKO (HC), 2026 WL 145889 (E.D. Cal. Jan. 20, 2026). Therefore, the Court finds that Petitioner's re-detention

---

[3] Petitioner filed several objections in response to Deportation Officer Justin M. Rodriguez's declaration and other attached exhibits. (Doc. 8.)  In deciding whether to issue a temporary restraining order, the Court may rely on exhibits, declarations, and affidavits, and the evidence relied upon is not subject to the same evidentiary standard as applied at summary judgment or trial. *See Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Therefore, Petitioner's objections to Respondents' proffered evidence are denied.

without a pre-deprivation hearing violated the Due Process Clause of the Fifth Amendment.

IV.    **CONCLUSION**

For the foregoing reasons, the Court **ORDERS**:

1.    Petitioner's Motion for Temporary Restraining Order (Doc. 2) is converted to a Motion for Preliminary Injunction, and it is **GRANTED in PART**;

2.    **Within 14 days** of the date of service of this order, unless Petitioner consents to a later date, Respondent **SHALL** provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," *id.* at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017). If Respondents fail to provide a timely bond hearing in accordance with this order, Respondents are ordered to immediately release Petitioner.

3.    Before the bond hearing, the Petitioner and his counsel **SHALL** receive meaningful notice of the scheduled hearing and both **SHALL** be entitled to appear at the hearing.

4.    The government may file a further brief on the merits of the habeas petition within 30 days. Alternatively, as soon as it can within that 30-day period, the government may file a notice that it does not intend to file further briefing. If the government files an additional brief, Petitioner may file a further brief within 30 days thereafter.

5.    The matter is referred to the assigned magistrate judge for consideration of the merits of the petition as quickly as possible.

IT IS SO ORDERED.

Dated:   **April 21, 2026**

UNITED STATES DISTRICT JUDGE

5